BRADSHAW v. STATE.

Criminal 4437 199 S. W. 2d 747

Opinion delivered February 24, 1947.

*John W. Baxter,* for appellant.

*Guy E. Williams,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellee.

E<small>D</small>. F. M<small>C</small>F<small>ADDIN</small>, Justice. Appellant was charged with the crime of rape. He was convicted of assault with intent to rape; and brings this appeal. The motion for new trial contains nine assignments, which we group and discuss in convenient topic headings.

I. *Sufficiency of the Evidence.* This embraces assignments 1, 2 and 3. The defendant was an employee of a carnival company that was showing at Green Forest in Carroll county. He operated a concession known as a "spinning wheel," where prizes could be sought by the turning of a wheel and the stopping of an indicator at a selected number. On Saturday afternoon, July 27, 1946, the prosecuting witness—a girl 21 years of age, but with the mentality of a nine-year-old child—wandered from one concession to another. Several times she stopped at the defendant's concession, and he engaged her in conversation. About 5:30 p.m. defendant was seen sitting on a bench talking with the girl, and when she went towards the ladies' rest room, he was seen to follow her. This rest room was partially surrounded by trees and shrubbery, and was approximately fifty yards from the carnival concessions.

Some 30 minutes after the defendant was seen to follow the girl in the general direction of the rest room, the girl returned to the carnival, crying, and said "some

old man'' had choked her. This was about 6:00 p.m. The girl's mother was summoned, and then the girl told her of the act of rape. Suspicion was directed against the defendant; and a search for him revealed that a fellow-employee had informed the defendant that if he were guilty, he had better leave; and, coincidentally, that the defendant had packed his bag and boarded a bus for Fayetteville, where his family lived. He was arrested in that city when he alighted from the bus, and the next day was returned to Carroll county, and identified by the girl as the man who had choked and raped her. Several witnesses testified as to bruises on the girl's throat, indicating that she had been choked. A physician testified as to rupture of the hymen, etc. From the witness stand, the girl told about the defendant taking her over the fence, and choking her, and ravishing her forcibly and against her will. There was other evidence which we need not detail.

The defendant stoutly denied his guilt, and put his good character and war record in evidence. His military record is that of a hero; and it is a pity for such a splendid record to be sullied by this affair. The jury found the defendant guilty of assault with intent to rape. We conclude that the evidence was legally sufficient to sustain that verdict, or even the greater offense of rape. This conclusion disposes also of assignment 4 in the motion for new trial, in which appellant says that the verdict was the result of passion and prejudice. After examining the entire record, we think the jury's verdict reflected leniency, rather than passion and prejudice.

II. *Rape, as Including also the Crime of Assault with Intent to Rape.* Defendant argues that he was charged with and tried for rape; and that the circuit court erred in instructing the jury as to the crime of assault with intent to rape. This argument (based on assignment 5 in the motion for new trial) cannot be sustained. In *Pratt v. State,* 51 Ark. 167, 10 S. W. 233, Chief Justice COCKRILL, speaking for this court, said:

''An assault with intent to commit rape is included in the charge of rape, and a conviction may be had of

the former offense under an indictment for the latter. Mans. Dig., § 2288; *Davis* v. *Sate,* 45 Ark. 464; 1 Bish. Cr. Law, § 809.

"It is conceded that the testimony would sustain a verdict for rape. That being true, there can be no question of its sufficiency to sustain the verdict for assault with intent to commit the offense. If it be conceded that the testimony would logically demand a verdict of guilty of rape or nothing, it does not follow that a conviction of an attempt to rape should be avoided here. The jury had the power to return the verdict and the offense is less than the crime charged."

The rule announced in *Pratt* v. *State, supra,* has been followed in subsequent cases, some of which are: *Paxton* v. *State,* 108 Ark. 316, 159 S. W. 396; and *Sherman* v. *State,* 170 Ark. 148, 279 S. W. 353; see, also, 52 C. J. 1124. Since, under the indictment for rape, it was permissible for the jury to convict the defendant of the crime of assault with intent to rape, it follows that the court was correct in instructing as to the lesser offense; and no complaint is made as to the wording of these instructions on this lesser offense.

III. *Corroboration.* The defendant insists that the testimony of the prosecuting witness was not corroborated, and that the court should have instructed the jury that corroboration was necessary. This is assignment 6 in the motion for new trial. The answer to this argument is two-fold. In the first place, in a rape case, the testimony of the prosecutrix does not have to be corroborated. This was definitely decided in *Hodges* v. *State,* 210 Ark. 672, 197 S. W. 2d 52 (decided by this court on November 11, 1946). See, also, 44 Am. Juris. 969, 52 C. J. 1099, and the annotation in 60 A. L. R. 1124. One of the essential elements of the crime of rape is that the act was committed forcibly and against the will of the prosecutrix. The existence of that essential prevents the prosecutrix from being an accomplice. See *Hummel* v. *State,* 210 Ark. 471, 196 S. W. 2d 594.

The second and final answer to defendant's argument concerning corroboration is the fact that the testi-

mony of the girl was corroborated. The bruises on her throat, her instant crying and complaint—these, and other facts—afforded corroboration, even though such corroboration was not legally necessary.

IV. *Refusal to Give a Cautionary Instruction.* In assignment 9 in the motion for new trial, defendant complains of the court's refusal to give defendant's requested instruction 1, which reads:

"I charge you that prejudice is liable to be aroused against the accused by reason of the heinousness of the crime of which he is accused, and, because of the difficulty of a defense against this crime and the ease with which it can be fastened on an innocent and reputable person, you should exercise the utmost discretion to avoid attaching undue weight to the uncorroborated accusations of the prosecuting witness."

In a prosecution for rape it is proper for the court to give a suitable cautionary instruction. See 52 C. J. 1123; 44 Am. Juris. 979; and the annotation in 130 A. L. R. 1489. The giving of such an instruction usually rests in the sound discretion of the trial court. The words of Mr. Justice Wood in *Rayburn* v. *State,* 69 Ark. 177, 63 S. W. 356, on cautionary instructions are worthy of repetition:

"Circumstances and occasions do frequently arise, however, when cautionary instructions, drawn in proper form, given at the proper time, and in the proper manner, are important and necessary. The discretion of the trial judge will not be limited in these matters, unless it has been grossly abused to the prejudice of the accused."

Such an instruction in a case like this one should tell the jury, in effect: that the crime charged is a serious one, and such a charge is easily made and hard to contradict or disprove; that it is a character of crime that tends to create a prejudice against the person charged; and, for these reasons, it is the duty of the jury to weigh the testimony carefully, and then determine the truth with deliberative judgment, uninfluenced by the nature of the charge.

But in the case at bar there are two reasons why the appellant is not entitled to a reversal based on the absence of a cautionary instruction. In the first place, the giving of a non-prejudicial cautionary instruction was discretionary with the court, and no abuse of discretion was shown in this case. In the second place, the instruction requested by the appellant was erroneous, in one particular at least, in that it told the jury "to avoid attaching undue weight to the uncorroborated accusations of the prosecuting witness." This language could have led the jury to believe that corroboration was required and not present, so that court was correct in refusing it. .

V. *Refusal to Charge on Circumstantial Evidence.* In assignments 6 and 7 in the motion for new trial, appellant complained of the refusal of the trial court to give his requested instruction, which read as follows:

"I charge you that circumstantial evidence is proof of a fact shown by circumstances. The chain of circumstances must point unerringly to the guilt of the accused, and if the chain of circumstances could have happened and the accused be innocent of the crime charged, they cannot be considered against him."

The court gave the jury 26 instructions covering every phase of the case, except circumstantial evidence. Some of the instructions given covered burden of proof, presumption of innocence and reasonable doubt. Since instructions were given covering these points, and since the state was relying on direct evidence—the testimony of the prosecuting witness—rather than circumstantial evidence, it follows that the trial court did not abuse its discretion in refusing the requested instruction on circumstantial evidence. See *Meadors* v. *State,* 171 Ark. 705, 285 S. W. 380; *Adams* v. *State,* 176 Ark. 916, 5 S. W. 2d 946; *Frick* v. *State,* 177 Ark. 404, 6 S. W. 2d 514; *Burrow* v. *State,* 177 Ark. 1121, 7 S. W. 2d 28; and West's Arkansas Digest, "Criminal Law," § 814.

VI. *Refusal of the Court to Require Certain Evidence to be Restated to the Jury.* This is assignment 8 in the motion for new trial. In the course of the prosecut-

ing attorney's closing argument to the jury, he commented on the evidence of a certain witness. The defendant's attorney then asked the court to have the stenographer read to the jury the testimony of such witness; and the record reflects the following:

"By the Court: Request denied, and exceptions noted. The jury may remember that point. However, if they do not, they may request that it, or any other testimony in this case, be read, and the court will have it read.

"(No member of the jury requested that the testimony requested by Mr. Baxter be read.)"

In 16 C. J. 857, and also 23 C. J. S. 421 the rule is stated:

"REPEATING OR READING TESTIMONY ON DISAGREEMENT. The common practice is, where a court stenographer is employed in taking the testimony, to have it read from his notes, where there is a disagreement as to what the witness said, and upon the request of the jury the court should direct the re-reading of depositions offered in behalf of accused. But where no predicate is laid for the impeachment of a witness who has testified before the jury, or where none of the jury express a desire to hear the testimony re-read, and it may be assumed that they heard it all, it is not erroneous to refuse to permit the testimony to be read to the jury." See, also, *Lister* v. *State,* 3 Tex. App. Rep. 17, and *People* v. *Harris,* 169 Calif. 53, 145 Pac. 520. In the last-cited case the Supreme Court of California, in affirming the action of the trial court in denying a motion to restate the testimony just as was made in the case at bar, said:

"This motion was made in the presence of the jury and they were told that if they desired the testimony of these witnesses read, the court would have it done; that if they were satisfied that they had heard it no purpose could be subserved by reading it again. None of the jury expressed any desire to hear it re-read, and it must be assumed that they heard it all and did not need to have any part of it re-read to them."

We have examined all of the assignments contained in the motion for new trial and find none to possess merit, so the judgment is affirmed.