Charles COBB *v.* STATE of Arkansas

CR 78-207                        579 S.W. 2d 612

Opinion delivered April 23, 1979
[Rehearing denied May 21, 1979.]

*William B. Howard,* for appellant.

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Charles Cobb was sentenced to two years in prison and fined $2,000 upon a jury verdict that he was guilty of selling a controlled substance to Jerry Leon Way, an "undercover" officer employed by the Lake City Police Department. Appellant raises six points for reversal. We find no reversible error and affirm.

Appellant first contends that the court erred in overrul-

ing his motion for new trial. It was based upon the allegation that Patricia Adams, the foreman of the jury, had concealed the fact that she had previously served on a jury that found another person guilty of a like charge in a case in which Way had testified, and thus prevented appellant from challenging her peremptorily. In his motion, appellant conceded that this juror had not told an untruth, but charged that she had deliberately concealed this fact.

Appellant raised this question after trial in May, 1978, but before he was sentenced. The juror was then questioned by the trial judge. She admitted that she had served as a juror in a case in which Way was a witness during the January, 1978, term of court in the Eastern District of Craighead County, the same district in which Cobb was tried.

During the voir dire examination of this juror by the trial judge, she had been asked if she was acquainted with, or related to, Way. She answered in the negative and added, "I know of him. I wouldn't know him even to speak to him." The matter was pursued by appellant's attorney on voir dire. The questions and answers so far as material, were:

Q. Mrs. Adams, I believe you indicated that you know Jerry Way Sr. casually, is that correct?

A. I don't know him to speak to him. I know who he is.

Q. You recognize him when you see him?

A. Yes.

Q. I take it there is nothing in that that would cause you to give his testimony —

A. No, sir.

Q. — any unusual weight? Now, of course, my client has been charged with having sold marijuana. I know there is a lot of feeling among most people with reference to the use of marijuana and the sale of marijuana. I don't have any criticism of that. I fall in the same category. I don't approve of either. In this particular

case my client is charged with selling marijuana. Do you feel that you would have any difficulty in approaching this from an objective standpoint in being completely unbiased where the charge is selling marijuana as contrasted to say a situation of where the charge was burglary or larceny, something of that nature?

A. No, sir. It wouldn't be any different.

\*\*\*\*\*

Q. Now, you have been interrogated by the Prosecuting Attorney about this matter of determining the credibility of the witnesses. Now, in this connection, a lot of people have this feeling. I don't have any criticism of it, but I need to know it. A lot of people feel that if an individual is an official, connected with the law, a law enforcement officer, that is more likely that that person will tell the truth in a criminal trial than, that is for example, for the Defendant to tell the truth. Do you have any such feelings?

A. No, sir.

Q. You don't believe then given this star and this gun makes everything an officer says the gospel truth?

A. Right. I can believe anybody else as much as I can an officer.

\*\*\*\*\*

Q. In other words, do you think the Defendant ought to have to offer any evidence in order to prove his innocence?

A. No, he's innocent until proven guilty.

Q. And he doesn't have to do anything to prove that. Is that the way you feel?

A. Well, I mean, he can get up there and testify and I'll take what he says as the truth like I would everyone else, but I will weigh the scales.

Q. What I am getting at — I guess it's my own fault, but we really got away from what I originally asked you. Assume for the moment that the State says, all right, we're through. We've offered all the proof we have. At that time, you sit there and say, well, I've got a reasonable doubt as to this man's guilt. Now, if you were in that state of mind, would you feel like the Defendant ought to come forward and offer anything else about it to prove anything else about it?

A. Well, if I believe that he was innocent —

Q. When the State got through with its evidence?

A. — when the State got through — I believe in listening to both sides. I don't know if I can answer your question.

*****

Q. Well, let me say this to you ma'am. I imagine it's the first time you've ever served on a Jury, is it not?

A. No, it's not.

Q. It's not?

A. No.

*****

Q. Would you give any more weight to the testimony of witnesses called by the State of Arkansas as contrasted to witnesses called by the Defendant?

A. No, sir.

We do not agree that this record discloses a deliberate concealment of the juror's previous service in a case in which Way testified. We do not consider that her statement that there was nothing that would cause her to give Way's testimony any unusual weight was contradicted by the fact that she had joined in returning a guilty verdict in another

case in which Way had testified for the state. At any rate, the granting or denial of a motion for a new trial lies within the sound judicial discretion of the trial judge, whose action will be reversed only upon a clear showing of an abuse of that discretion or manifest prejudice to the defendant. We are certainly unable to say that there was any abuse of discretion in this case, and prejudice is not manifest. *Newberry v. State,* 262 Ark. 334, 557 S.W. 2d 864; *Hewell v. State,* 261 Ark. 762, 552 S.W. 2d 213; *Wright v. State,* 35 Ark. 639.

Appellant next argues that the trial court erred in refusing his motion for mistrial or a stronger admonition than that given "after the court had erroneously admitted a collateral attack on the testimony of defendant's witness, Joe Pardi."

Pardi had testified that Cobb had not attempted to sell marijuana to Way, but that Way had actually attempted to sell it to Cobb, and that Way had the marijuana in question in his own possession at all times. On cross-examination, Pardi had denied that marijuana had been smoked in a house in which he had lived with Cobb, or in any house in which he had lived. He also denied that Officer Bill Hook had come to Cobb's house while a marijuana party was in progress. Cobb's attorney, on redirect examination of Cobb, asked him about the implication that Hook had come to Cobb's house while a marijuana party was in progress. Cobb denied that Hook had ever come to his house and denied that marijuana had ever, to his knowledge, been in his house. On recross-examination by the prosecuting attorney, Cobb denied any knowledge of any such party and denied that Hook had ever had any occasion to remove a juvenile runaway from Cobb's residence. Cobb also stated that he had never been present at a party anywhere at which such an activity had occurred.

Hook was then called as a witness by appellant, whose attorney asked whether Hook had ever gone to the home of Charles Cobb when a party was in progress. Hook gave a negative answer. On cross-examination, the prosecuting attorney asked whether Hook had made some statement to him during the preceding day regarding a party at which this officer had occasion to remove a juvenile from the appellant's presence. Appellant's attorney objected that the question related to a hearsay statement and that it did not tend to im-

peach the witness. There was no abuse of the trial court's discretion in the overruling of appellant's objection to this question, which was directed toward explaining the basis for the prosecuting attorney's cross-examination of Cobb, invited by questions asked on direct examination of Hook on a collateral matter after Cobb had denied that any such incident had taken place. Hook then answered that he had stated to the prosecuting attorney that he had gone to Joe Pardi's house prior to the time that Pardi and Cobb had lived together. A motion to strike this testimony and for an admonition to the jury to disregard it as an improper collateral matter was denied. When the prosecuting attorney asked Hook to relate the circumstances relative to the incident at Pardi's house, appellant's objection was at first sustained. When the prosecuting attorney reminded the trial judge that Pardi had testified that he did not use marijuana and that he could not remember Hook's ever being at his house and argued that the testimony was relevant on the question of Pardi's credibility, the trial judge reversed his rulling and allowed further inquiry by the prosecuting attorney, over appellant's objection, on the ground that it constituted an attempt to impeach Pardi on a collateral matter. The witness then testified that he had gone to Pardi's house and had removed a juvenile, but that Pardi was not present at the time. After the witness responded affirmatively to the prosecuting attorney's inquiry whether Hook smelled marijuana on that occasion, appellant's attorney asked the court to instruct the jury to disregard the testimony. The trial judge stated, "The motion will be granted. The jury will be told to disregard the testimony."

Appellant's attorney requested no further action until after the state called a rebuttal witness, whose testimony was excluded by the court, and the state had made a proffer of the testimony expected from this witness. For the first time, just prior to discussion of instructions to be given the jury, appellant's attorney moved for a mistrial on account of the admission of Hook's testimony on cross-examination with reference to Pardi, stating that, even though the trial judge had told the jury to disregard the testimony, the admonition was not sufficient to cure the prejudice that resulted from two or three separate objections, and the court's overruling of them. When this motion was denied, appellant's attorney

asked the trial judge to admonish the jury that the "testimony was highly improper, it should not be considered for any purpose and it never should have been admitted." The judge responded that he had already admonished the jury and no further admonition would be given.

We have said many times that the declaration of a mistrial is a drastic remedy to be resorted to only when the prejudice is so great that it cannot be removed by an admonition to the jury. *Limber* v. *State*, 264 Ark. 479, 572 S.W. 2d 402. The matter lies largely within the discretion of the trial judge. *Cary* v. *State*, 259 Ark. 510, 534 S.W. 2d 230. We find no abuse of discretion in the denial of appellant's motion for mistrial.

When we consider the background from which the prosecuting attorney's inquiry was initiated, the fact that Hook stated that Pardi was not present when the officer had gone to the house and had smelled marijuana, and the time at which the request was made we cannot say that the failure to give a further admonition to the jury was prejudicial error.

The court denied appellant's request for an instruction that the jury should not show prejudice against defendant because his attorney made objections to evidence; that the trial judge's allowing testimony over the objection of an attorney was no indication of an opinion as to its weight or effect; and that, when an objection to a question was sustained, the jury could neither draw an inference from the wording of the question or speculate as to what the answer of the witness might have been. We find no merit in appellant's argument that failure to give one part of this instruction denied appellant effective assistance of counsel and failure to give another violated Art. 7, §23 of the Constitution of Arkansas, prohibiting judges from charging juries with regard to matters of fact. Although there may be nothing in the instruction that was incorrect, it was only cautionary. The giving or refusal of such an instruction lies within the sound discretion of the trial court. *Fields* v. *State*, 255 Ark. 540, 502 S.W. 2d 480; *Williams* v. *State*, 254 Ark. 940, 497 S.W. 2d 11. There is no ground for reversal in the refusal to give such an instruction in the absence of gross abuse of discretion. *Williams* v. *State*, supra. We find none here. The trial judge did instruct the jury that it was the sole judge of the credibility of the

witnesses and the weight to be given to the testimony of any and all witnesses and that these were matters with which the court had nothing to do. The instruction also stated that each juror must decide the case for himself, after impartial consideration of the evidence in the case, that the sole interest of the jury was to seek the truth from the evidence in the case and that it was the duty of the jury to return a verdict in accordance with the law declared by the court and the testimony.

Appellant also argues that there was error in the court's failure to give his requested instructions on the effect of the filing of the information by the prosecuting attorney and the presumption of innocence. Appellant admits that his requested instruction as to the information was covered by the court's instruction that the information did not constitute evidence against him. The instruction given actually went further. By it, the jury was told that the information was a mere formal charge or accusation, and that the state had the burden of making out its case to the satisfaction of the jury beyond a reasonable doubt. This instruction also defined reasonable doubt and informed the jury that appellant was presumed to be innocent until proven guilty and that it should acquit him if it had a reasonable doubt as to his guilt. We find no merit in appellant's argument that more emphasis should have been given to the lack of evidentiary effect of the information.

Appellant admits that the substance of his requested instructions on the presumption of innocence was covered by instructions given. He complains, however, that one of his requested instructions should have been given in preference to the instruction given because the jury was not told that the presumption of innocence served appellant as evidence in his favor throughout the trial and entitled him to an acquittal unless the evidence adduced by the state convinced the jury, beyond a reasonable doubt, that he was guilty of the crime charged.

Appellant confesses that the only question is whether one or the other of his requested instructions should have been given in preference to that given. We think that the requested instructions were sufficiently covered by those given. In such a case, the trial court is not required to instruct the

jury in every possible manner, even though a party's offered instruction may not be incorrect. *Butler* v. *State,* 261 Ark. 369, 549 S.W. 2d 65; *Cox* v. *State,* 254 Ark. 1, 491 S.W. 2d 802, cert. den. 414 U.S. 923, 94 S. Ct. 230, 38 L. Ed. 2d 157.

The judgment is affirmed.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.