Wallace E. FLOYD *v.* STATE of Arkansas

CR 82-99                                    645 S.W.2d 690

Supreme Court of Arkansas
Opinion delivered February 7, 1983
[Rehearing denied March 14, 1983.]

*John W. Settle,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant was found guilty of attempted rape and burglary and of being an habitual

criminal. He was sentenced to 50 years for attempted rape and 30 years for burglary. On appeal he argues: (1) that his fingerprints were illegally seized; (2) that the court erred in allowing the state to enumerate his prior felonies; and, (3) that the state was allowed to appeal to the passion and prejudice of the jury in closing argument. We do not agree with any of the points urged for reversal.

Appellant was being held on an unrelated charge when his fingerprints were taken for use in comparison to prints which had been found at the scene of an attempted rape and burglary. As a result of a "suspicion" that appellant may have been the party involved in the attempted rape and burglary, the police department took the fingerprints here in question. These prints turned out to be the link connecting appellant to the crime for which he was convicted and which is the subject of this appeal.

During the course of the trial the appellant elected to testify in his own behalf. On direct testimony he admitted that he was a convicted felon. On cross-examination the state, over appellant's strenuous objection, was allowed to ask him if he had been convicted of nine felonies. The court required him to answer. He responded that he had. In closing argument the state, while arguing to the jury, stated, "We can't continue in this community or any community to have these people commit crimes . . . " Counsel for appellant interrupted and objected to this argument. A motion for a mistrial was denied.

Appellant's first argument relates to the taking of the fingerprints while he was in custody on an unrelated charge. We agree with appellant's argument that fingerprints are protected by the Fourth Amendment and are subject to the provisions of the amendment. We abide by the holding in *Wong Sun v. United States*, 371 U.S. 471 (1963), subsequently followed by us in *Scroggins* v. *State*, 276 Ark. 177, 633 S.W.2d 33 (1982). In *Scroggins*, we held that it was the state's burden to prove that the motel room which had been searched without a warrant was not subject to constitutional protection. We also held that the Fourth Amendment prohibited warrantless seizures of persons as well as prop-

erty and cited as authority therefor the case of *Davis* v. *Mississippi,* 394 U.S. 721 (1969). Our exact language on this subject in *Scroggins* was:

> . . . it is elementary that the State must prove that a warrantless intrusion, in this case an arrest, was not in violation of the fourth amendment.

We do not have an illegal intrusion or seizure in the case before us. The appellant was legally in custody of the state and the giving of the fingerprints is a routine matter which is within the discretion of the police department. It is not illegal for an officer to have a suspicion, and the fact that the appellant was not an actual suspect at this time has no relationship to the allowable investigative procedures employed by police officials. Had appellant been picked up solely on suspicion, without probable cause, and his fingerprints taken, then we would have a different situation. See *Davis* v. *Mississippi,* supra.

The second argument for reversal is that the trial court erred in allowing the state to ask about several prior felony convictions. In this case the appellant took the stand and upon direct questioning admitted that he had been convicted of a felony. On cross-examination the trial court allowed the state to ask if he had not "been convicted of nine previous felonies." Appellant argues that when he took the stand and admitted he had been convicted of a felony he had been impeached and the state should not be allowed to further impeach him. This argument is based upon Uniform Rules of Evidence, Rule 609. This rule has been considered by this court and the Court of Appeals many times. The wording of the statute is of no help in deciding whether the intention was to allow more than one conviction. The case of *Jones* v. *State,* 274 Ark. 379, 625 S.W.2d 471 (1981) dealt with Rule 609 (a). In *Jones* we stated:

> The Uniform Rule is specifically directed to the conviction's probative value with respect *only* to credibility, because under both our common law and the Uniform Rules proof of an earlier crime is not admissible merely to bolster the prosecution's case by show-

ing that the accused is a person of bad character, addicted to crime.

The rule grants the trial court discretionary power to determine whether the probative value of admitting evidence of a prior felony outweighs the prejudicial effect on an accused or a witness. We applied the provisions of the rule in *Jones* when we stated:

> On the facts of this case the prejudicial effect of the previous conviction clearly outweighed its value as bearing on credibility. There may be instances in which proof of an earlier conviction for the same crime as that on trial may be admissible, but there are sometimes strong reasons for excluding such proof because of the pressure on lay jurors to believe that "if he did it before he probably did so this time." [Cite omitted.] That is especially true in the case at bar, because sexual abuse of a child is a particularly shameful and outrageous crime.

In *Smith* v. *State,* 277 Ark. 64, 639 S.W.2d 348 (1982), we were concerned with whether the crimes introduced at the trial were within the 10-year limitation of Rule 609. Appellant there did not question the introduction of multiple convictions. In *Jones* v. *State,* supra, the question was whether an earlier conviction could be considered under the discretionary powers of the trial court. The Court of Appeals considered this question in *Williams* v. *State,* 6 Ark. App. 410, 644 S.W.2d 608 (1982), and stated, we think correctly, that the probative value must be weighed against prejudicial effect on a case by case basis. We stated in both *Jones* and *Smith* that the probative value must be weighed against the prejudicial effect when evidence of prior convictions is admitted. We still hold this to be the rule. Only one prior conviction was considered in the case of *Campbell* v. *State,* 264 Ark. 372, 571 S.W.2d 597 (1978). We see nothing wrong with the holding in *Campbell* that the fact of conviction impaired the witness's credibility. The state there did not go into the nature of the evidence surrounding the conviction for the prior crime. To have gone into the details of prior convictions would be to defeat both the purpose and plain

wording of Rule 609. The state asked the appellant only one question: "How many felonies have you been convicted of?" The question in this form is not impermissible but would be better stated in words such as: "Were you convicted of the crime of burglary on a certain date?" The same question could have then been asked of each of the prior convictions. In this manner the jury would be made aware of the number and nature of prior convictions while impermissible details remained undisclosed.

Appellant took the stand and admitted he had been convicted of a felony. He then insisted that he had been impeached. To allow either party to head off the testimony of the other in such a manner would not be in keeping with the standard of fairness with which a trial should be conducted. We do not believe that Rule 607 was intended to allow either party to prevent the other party from testing the credibility of a party or witness in such a manner. Therefore, we hold that when an accused, or a witness, takes the stand he may be asked on cross-examination how many times he has been convicted, within the applicable restrictions set forth under Rule 609.

Finally, appellant argues the state was improperly allowed to appeal to the passion and prejudice of the jury when the state's attorney stated in closing argument: "We can't continue in this community or any community to have these people commit crimes . . . " Appellant objected to the statement and moved for a mistrial which was denied. The court stated to the jury: "The jury is well aware of what offenses the defendant has been charged with." It is appellant's contention that the statement by the state tended to focus the jury's attention to crime in general in the community. This may be true. However, this interpretation strains the plain wording of the statement. We are not able to see any prejudice to the appellant especially since the court issued an admonition to the jury. Appellant is correct when he says that the fundamental rules of trial practice as related to closing arguments must be confined to the question in issue and the evidence and reasonable inferences deducible therefrom which have been presented during the course of the trial. *Simmons & Flippo* v. *State,* 233 Ark. 616, 346

S.W.2d 197 (1961). Likewise, we agree with appellant that the state's attorney acts in a quasi-judicial capacity and it is his duty to use fair, honorable, reasonable and lawful means to secure a conviction in a fair and impartial trial. We cannot see in this remark by the state's attorney any improper inducement or conduct on the part of the prosecutor to secure an unfair trial against the appellant. Before a mistrial is granted it must appear that justice cannot be served by continuation of the trial. *Cobb* v. *State*, 265 Ark. 527, 579 S.W.2d 612 (1979). We would hardly expect the state to argue in favor of the appellant in its closing argument. Under the circumstances in this case we do not find the incident to have resulted in prejudicial error.

Affirmed.

DARRELL HICKMAN, Justice, concurring. Quite often our review of records reflects that many lawyers do not know how to impeach a witness.

In this case the prosecuting attorney asked the defendant: "Actually, Mr. Floyd, you have nine previous felony convictions, do you not?" That is an improper question. 2 CRIMINAL DEFENSE TECHNIQUES § 26.09 [2] (1982); *See* 3 GOLDSTEIN TRIAL TECHNIQUE § 20.80 (2d ed. 1969). The effort to discredit the witness was being made by showing the witness had been convicted of certain crimes. Ark. Stat. Ann. § 28-1001, Rule 609 (a), defines just what criminal convictions may be used to discredit a witness' testimony. There are two categories of crimes generally described as (1) felonies and (2) crimes involving dishonesty or false statements.

If a conviction falls within category 2, the trial judge does not decide whether the information is more prejudicial than probative since a conviction that contains an element of dishonesty obviously will bear directly on the veracity of the witness. But a conviction for a crime that does not involve an element of dishonesty may not necessarily show that a witness is a liar. For example, a conviction for manslaughter would not necessarily prove a person would

lie under oath. Therefore, the trial judge must weigh the evidence of convictions before the witness can be asked about such convictions.

It is the nature of the crime the witness was convicted of that relates to the veracity of the witness. A jury that knows a witness has been convicted of robbery, which is a form of thievery, may well decide such a witness would unhesitatingly lie. The question should be: "Isn't it true you were convicted of robbery in the Circuit Court of Pulaski County, Arkansas in 1980?" It would not be proper to ask, "Have you been convicted of a felony," or "nine felonies." That is meaningless to a jury which must decide how that information bears on one's propensity to tell the truth. The appellant's argument is equally wrong. The appellant wants the State to only be able to ask, "Have you ever been convicted of a felony?", and, in this case, not be allowed to mention that the defendant has nine felony convictions. This is a confused application of the rule that, ordinarily, the details of the offense cannot be mentioned. *See* McCOR-MICK ON EVIDENCE § 43 (2d 1972).

Both attorneys miss the meaning of the rule and the way it may be used in court. If the State does have evidence of nine convictions that qualify for use under Rule 609, then the State can ask the proper question nine separate times.